We're happy to hear argument in our last case, No. 16-6026, Doe v. Cooper. Good morning, Your Honors. May it please the Court. My name is Matthew Boyatt with the North Carolina Department of Justice. I represent the State Defendants in this matter. This is an appeal involving North Carolina sex offender registry laws, specifically those regulations that prevent qualified sex offenders from being on certain premises in other locations that are intended primarily for children and where children gather for various programs. The district court held that Section 82 of the statute in question was constitutional with respect to the plaintiff's First Amendment rights as it applied to child victim offenders, so those offenders who have been convicted of a crime against a 15-year-old child and younger. Section 82 provides that it shall be unlawful for a registered sex offender that qualifies under the statute to be within 300 feet of any place intended primarily for the use, care, or supervision of minors when that place is located on a premises open to the public. The district court held that this was overbroad insofar as it applied to adult victim offenders, those individuals who are sex offenders who may not have committed crimes against a child. The district court concluded that that violated these offenders' First Amendment right to free speech and therefore the statute was overbroad. In doing so, the district court relied heavily on the case of Rose v. Nebraska, which was an Internet restriction case that prevented a large swath of sex offenders from being on sites such as MySpace, Facebook, Skype, and Twitter. Just for my understanding, would the prohibited class of individuals include, and I don't know the details of the North Carolina definitional statutes, if spouse A is convicted of sexual battery of spouse B, is that going to qualify somebody as a sex offender? Yes, Your Honor. Sexual battery would qualify the individual under this statute. The individuals who qualify have been convicted of violent sex offenses, offenses involving use of force against the person's will for the purpose of sexual gratification, so it includes sexual battery, forcible sex offense, and forcible rape. What about statutory rape? 20-year-old and a 14-year-old, is that going to qualify? Yes, Your Honor, it would qualify as well. So, Your Honors, under Doe v. Nebraska, the government did not present a direct link by way of evidence showing that use of MySpace, Facebook, Skype, or Twitter resulted in sex offenders going on to court and solicit and commit a crime against a child. And so in that case, the court held that the risk was just conjectural, and therefore this regulation was sweeping and overbroad. However, that is not the case that we're dealing with in North Carolina. The risk that these adult victim offenders pose is not conjectural. It is a real risk. Well, why don't you – it seems to me that Section 2 and Section 3 are somewhat different. Maybe it would be worthwhile directing an argument to one and then the other. Yes, Your Honor. I think the court addressed itself first to Section A3, didn't it? I will then switch, Your Honor, and address A3 first, and that involves the vagueness challenge. So the district court, Your Honor, held that A3 was vague because it did not define what is meant by where minors gather, nor did it define what constitutes regularly scheduled. Your Honor, the statute at question is not vague because it contains a common core that is readily understandable to any reasonable person and to any sex offender who is coming on the registry. This statute has to be considered as a whole, looking at A1, A2, and A3, not just looking at A3 independent of the first two sections. So a registered sex offender coming on to the registry, starting at the beginning and looking at A1 of the statute, will know that they cannot go on the premises, the entire premises of any place intended primarily for the care or supervision of a minor. And the statute gives examples of that, such as schools, daycare centers. Section A2 goes on to instruct the sex offender that they cannot be within 300 feet in these mixed sites, so there's a protective buffer zone. Sex offender cannot be within 300 feet of any area intended for the care or supervision of minors when that place is located in an area open to the public. Subsection 2 incorporates the list in subsection 1 by reference, but there isn't anything in subsection 3. Normally our canons of construction would tell us that when the legislature writes a statute and they include provisions in certain sections but omit them in others, there was a reason the legislature did that. I cannot speak to exactly why the legislature omitted examples from A3. What I would say, Your Honor, is that... Well, that's sort of why we have the canon of construction when we look at those statutes. You're not particularly dealing with state laws. You usually don't have legislative history. Each of these sections represents a completely distinct criminal offense. And what we're saying is A1 and A2, in looking at that, those establish a common core to this statute to where a sex offender, reading Section A3, would understand clearly the type of conduct that is prohibited. I don't understand it, and maybe sex offenders have better ways of understanding it, but it strikes me that it could be regularly scheduled doesn't tell me how often. Once a day? Once a week? For every birthday party? What does that mean? Your Honor, the district court correctly defined regularly scheduled as happening at fixed intervals. As I say, the fixed interval could be once a day, once a week, once a month? Yes, Your Honor. The Supreme Court, in cases such as Parker v. Levy, Hoffman Estates, Supreme Court cases, have recognized that even though a statute may have an imprecise standard, it is not vague if the conduct that is prohibited is comprehensible. And this case is a perfect example of that. Your Honor, there can be no one-fix-all set definition for regularly scheduled. That could be taking, for example, in the context of this. How does somebody know if they've committed a criminal act? Again, looking at the core of the statute, a sex offender knows that they are prohibited from locations where children or where minors gather regularly, whether it's at a school or a softball or a soccer field. Well, let's take an example and see if you can answer this. Just right outside the window here is the entrance to the Capitol. And so periodically there will be buses that pull up and unload school children, sometimes none, sometimes a couple of busloads. And that's also the general entrance for all members of the public, so it's going to include a lot of adults. Some days that's all that is. So if you're a convicted sex offender and you're driving down the street here, how do you know whether that spot is a place that minors gather or whether or not it's a regularly scheduled activity and what the program would be? Your Honor, the statute does contain a scienter requirement, and so the sex offender would have to know that that location is where minors gather regularly for a scheduled program, whether it's educational or recreational. If they were unaware of those facts, then it would not be a violation of the statute. But with respect to how North Carolina's law is structured. Well, let me ask you this. If they are driving down the street and they see a school bus unloading, even though they have no way of knowing whether or not it's something that happens every day, once a week, once a month, are they then in violation of subsection 3? No, Your Honor, because, again, subsection 3, even looking at it independently, it has to be where they gather for a scheduled program, a scheduled program, whether it's. . . in the capital. Based on the plain reading of the statute, a reasonable person would understand that the sex offender cannot be there. Yes, it's restrictive, but that's not to say it's vague. If there is a regularly scheduled program that happens, as Your Honor has pointed out, two, three times a week. . . No, no, no, once every two weeks was my hypothetical. That would be a violation of the statute, Your Honor. Well, you know all these questions that we've asked you, and you're giving us your legal advice, and we appreciate it. Isn't there evidence in the record where sex offenders were calling to find out whether, in fact, they were barred from going here under 3, whether they were barred from going to church, to college, to classrooms, to college classrooms, you know, or a high school classroom, where there'd be one person under the age of 17, and they weren't being given an answer. They were giving various answers about this statute. There is evidence. . . And they were supposedly calling people that knew. There is evidence in the record. I'm not sure that a law enforcement officer would give them legal advice. That is perhaps. . . You have to go get your lawyer before you walk outside your house? Well, Your Honor, no, that's not accurate. You would not have to. So it would be the police who enforced this law would be the people that would know, that you could call? In North Carolina, the sheriffs, the elective sheriffs, are the ones who have an appointed sex offender register officer who would be the one who would answer those questions. I'm only aware of. . . There's nothing in the record about someone asking their sex offender officer? I'm aware of one case in the record that dealt with an officer with respect to A3 and a church telling the sex offender that he could go there as long as children were not present. That doesn't mean the statute is vague, Your Honor. That's more of an indication that that officer did not read the statute because that's clearly not listed. Also, it's not just a matter of whether or not the prospective defendant under a criminal statute is unable to tell what the statute means, but law enforcement has to be able to know how to enforce the statute so that its enforcement isn't arbitrary or uninformed. And we agree with that. I agree with that, Your Honor. The fact that this statute has a common core that is understandable and that a reasonable person could understand, it is not vague even with respect to how law enforcement would view the statute. But you just told us that there were instances in the record where the law enforcement officers couldn't interpret or interpreted the statute differently or improperly or something, and then you said they have to go to this special officer. So Judge Agee is saying, well, shouldn't the police be able to interpret it so that they know who's breaking the law or not? And you said yes. Just because you have a few officers in North Carolina, and this law has been in effect for 10 years, the fact that there are a few examples of that does not make this statute vague. What I would ask the court to consider are all of those instances where it is as clear as a pike staff that a sex offender can't be there. So, for example, under A3, if you have a children's or minor sports program at a park, at a football field, that meets twice a week, games on weekends, and that happens quite often, obviously, the sex offender would realize that they're not allowed at that location. I think what we're talking about are these marginal offenses where we get into hypotheticals that are being asked. That should not justify striking this statute as vague in its entirety. If I can move on briefly to A2, which was also at issue in this case, the statute is not overbroad with respect to adult victim offenders because those offenders pose a real risk to minors. So what's your, if I'm remembering the case correctly, I thought the district court had asked you, or whoever tried this case, to put on evidence, and the state affirmatively decided that we're not going to put on any evidence. The district court specifically requested an expert witness to testify about the issue of risk with adult victim offenders. I do not believe that is required based on several reasons. Within the record, there . . . Excuse me, but Judge Agee is correct, that the district court told you that it was inclined to find this vague, right, and invited you to put on some evidence to demonstrate that it wasn't, and the state declined that invitation and said, no, we want this decided on the record that's in front of you right now. Is that correct? Correct. The district court invited the state to do that approximately two weeks before trial. This case is . . . Well, this has been going on a long time now. Correct, Your Honor. So you had a lot of chance to build a record, to get an expert, to do whatever you wanted to. And instead of just going on the record, the district court said, look, I'm inclined to rule against you. Get an expert. Get some evidence here. And you said, no, we don't need to. We're happy with the record as it exists. Yes, Your Honor, and if I could explain in just one minute why. Of course. The state should not be required to do that because the risk is real. There is in the record a Department of Justice study that has shown that 1.3 percent of adult victim offenders go on to molest children. Within three years. That's a real risk. That's why we have this statute. Over-inclusion should not be considered . . . That was defendant's evidence, I think. I mean, it's still evidence. It's evidence, Your Honor. And in addition to that, we've got the Supreme Court on multiple occasions finding that these individuals are a threat, the United States Congress finding that they are a threat, and the whole reason behind SORNA statutes. It is not a conjectural risk. It's real. That's why we have this statute, and that's why it's not over-broad. Thank you. May it please the Court. My name is Paul Dubling. I represent the John Doe's 1 through 5, the appellees in this case as I represented them before the district court below. As the court correctly noted, there are two distinct issues before the court today. First is the district court's finding that subsection A3 is unconstitutional because of its vagueness. I think the court correctly picked up on in the prior argument that there's two things going on. One, the district court did an extensive analysis of existing case law, considering phrases substantially similar, almost identical to the phrasing in the statute, where minors regularly congregate, where someone regularly operates a vehicle. And consistently across the board, those cases find that use of those phrase is unconstitutionally vague unless the statute contains some sort of guidance to law enforcement officials or to persons subject to the statute to give an idea of how to narrow those, something that indicates what is meant by regularly. The use of the phrase itself suggests that the mere presence of minors sometimes is not enough to trigger the statute, but there's some level of minor participation that's going to do it, and it's incumbent upon legislatures to give some clarifying guidance in that instance. At the same time, where minors gather, again, it's not the presence of minors. It's some number of minors doing something together or merely being present, but there's no guidance in the statute of what the legislature meant by that. And in this case, we did build a record very specifically to show that these aren't about hypotheticals. We have affidavits from each of the John Does explaining how they have specifically gone to law enforcement officials and asked for clarifying guidance, and not only have they been told they don't know, they've been told not to do something because law enforcement believes they might be in violation of the statute. And that's exactly what the vagueness doctrine is intended to prevent, a situation where someone is not allowed to engage in perfectly legal, constitutionally protected activity because they don't know, nor can law enforcement even tell them, whether or not that activity would be prescribed by the statute. Is the word program defined in the statute? No. None of these words are defined in the statute, Your Honor. The state suggests that it can solve this by saying, well, you have to read the statute together, but if you read the statute together, you don't solve the problem. You actually highlight it. You bring it into starker relief. Subsections A-1 and A-2 give a list of examples. You can't be at any place intended primarily for the use of minors. What do we mean by that? We mean schools, daycares, nurseries, places like that. And as Judge Agee correctly pointed out, A-2 specifically incorporates the examples of A-1, whereas A-3 specifically leaves them out. The canons of statutory construction suggest exactly that A-3 does not mean places like schools, nurseries, playgrounds, stuff like that. They mean something else. So in this instance, we have a statute that says places where minors regularly gather that are at some level that trigger this statute, but aren't at a high enough level to make that place primarily intended for children. It's this nebulous middle ground, this sort of weird catch-all, with no guidance whatsoever to guide either the decision-making of citizens subject to the statute or law enforcement officials responsible for enforcing it. And you see in the record not only the affidavits of individuals saying that they have been unable to get clarifying guidance. You see the affidavits of the district attorneys themselves saying they're not sure. On both ends of the spectrum, the uncontradicted testimony is that there's a broad swath of constitutionally protected activity that we simply do not know as a practical matter whether or not it falls within the statute. And the case law suggests there is a way for a legislature to address these problems very specifically, and that is to provide some clarifying guidance of how often is regularly, of what they mean by minors gather, precisely to avoid this problem. With your permission, I'll move on to subsection A-2. Again, the state acknowledges and has never contested that it has the burden here to show that this statute is narrowly tailored. Again, the plaintiffs in this case built a record showing the extent of First Amendment burdens that this statute places upon them.  This statute prevents them from going to churches. It prevents them from going to libraries. It prevents them from going to community centers. It prevents them from going to broad swaths of parks. We put maps in the record showing how complicated it is. You have to take a specific alley in downtown Raleigh, North Carolina, to get to the Capitol building to avoid being within one of these protected zones. I don't think you dispute that people who have abused children can be limited by this statute, right? That question, Your Honor, is not before the court because we have not challenged the district court's finding that A-2 would be constitutional as applied to minor victim offenders. So that's the law, right? Not today, not here, no, ma'am. So that problem, the problem that you were just talking about, would apply to anybody, whether an adult offender, whether an offender whose victims are adults or children. So I think your real issue is whether this can be applied to adult molesters. Yes, Your Honor. That is the issue before the court. So as the state finally seems to understand, they don't have any evidence. Correct, Your Honor. But you all put in the DOJ study. Is that enough evidence? Respectfully, Your Honor. I mean, it's in the record. It is on the state. This is the third case today where we've talked about burdens.  of showing that the statute is narrowly tailored. Right. They specifically declined to actually produce any evidence in support of that burden. You all put this DOJ study into the record. And it does show that adult offenders have some higher percentage likelihood of reoffending against minors compared to the population at large. We dispute that that's what that evidence says, Your Honor. If you look in the state's own brief, it specifically says that that study is not reliable. The study itself says this should be taken with a grain of salt. The problem is you vouched for it by putting it in, right? Well, we vouched for it in the sense that the state offered the district court at the hearing said, what sorts of evidence would you put in? And we put in the study. We contend strongly that that study shows that the actual risk of adult victim offenders reoffending against minors is about the same as the background risk of recidivism for any criminal offender. Well, if you do the math out, it looks like that sex offenders, adult offenders, are slightly at least more likely to engage in molesting children than people who are not offenders at all. Even assuming that were true, Your Honor, the question is not can the state in a hypothetical world present some evidence that there's some slight increase of risk. Can they present specific evidence of dangerousness sufficient to justify the broad First Amendment burdens? And they simply haven't even attempted to do that. They're trying to bootstrap themselves into our evidence and claiming, well, this shows what we had to bear all along. But the state bearing the burden in this case said, no, no, one, their evidence doesn't matter. Two, we acknowledge we have the burden, but we're actually not going to produce any substantial evidence. And then they've come before the court today and asked the court to vouch for that, to say, well, at best, at absolute best, there is some evidence in the record that arguably demonstrates there may be some slight increase of risk. And despite the fact that you dispute the validity of that evidence, despite the fact that it's not your evidence, despite the fact that standing alone it doesn't meet your burden, we want you to rule for us. The state with regard to A2, Your Honor, has specifically declined to do its job. And it really should lose on that point. It shouldn't now come back and say, well, we dispute the meaning of their evidence, so we want to treat it as our evidence, and then we want to say that it completes our burden. Was this evidence, this DOJ study used by the state before the district court? No, Your Honor. The state never produced any studies. I understand it didn't produce any, but this is in the record. So did they appoint to it and say, look, these adult offenders are more likely than other people? Absolutely not, Your Honor. The state never before the district court made any comments about that study. Your Honor, a study which may show some slight increase of risk, and, again, that study itself does not show what the state wants it to show, that's 20 years old, is simply not sufficient to meet the state's burden in this case. We built the record. We showed the First Amendment burden. That makes it incumbent upon the state to justify these broad restrictions. And a 1% arguable risk of recidivism with – Not 3%. No, excuse me, Your Honor, but I believe that's an incorrect understanding of that study. Okay. I did all the math out, took the – but you go ahead. If I may, Your Honor, I believe that 3% is the suggested overall recidivism rate for persons convicted of sex offenses. The – accepting the math of the study, the recidivism rate for persons convicted of offenses against adults who are later convicted or arrested of any offense against a minor is more like 1%. That study specifically declines to take into account the effect of time. That study also specifically shows that after one year, recidivism rates for all sex offenders plummet. It specifically does not take into account the effect of remedial programs offered in the jails, the SOAR program, the SOTP program, which in our record we've built, demonstrate a decrease in the risk of recidivism, and many of our plaintiffs went through. So, again, at best, at best, that study shows that there is perhaps a 1% risk of recidivism for an adult victim offender, a risk which that study also shows declines by half a year after release, a study that does not take into account the effect of rehabilitative efforts, and a study that we produced to make those points because those points are in our favor. The state, in contrast, said, well, we're not going to produce any evidence, but we're just going to try to potshot yours, and they didn't even do that before the finder of fact. The state accepted that before the finder of fact. They never made these arguments. And in a last-ditch effort to cover the fact that they didn't do their job, they're coming before the court today and trying to say, well, you could read this evidence in a way that supports our case, so, therefore, you should rule with us, and that doesn't meet their burden. You know, I believe that's really the issues here today. There's a clear rule. A3 is vague. All the courts that have looked at it have said it's vague. It has all the negative effects of a vague statute. A2 creates substantial First Amendment burdens that are simply not justified by any evidence the state has proffered, and certainly not justified by the evidence that we have proffered. In this case, it is incumbent upon the state to justify the imposition of these restrictions, and when it imposes those restrictions on a substantial class of people, near-tautologically, the statute is substantially overbroad. And for those reasons, respectfully, pending any further questions. Can you address briefly the General Assembly's, I think they've passed some provisional amendments or proposed amendments or something? Yes, Your Honor. To both provisions? Yes, Your Honor. The General Assembly in July of this year took a look at the district court's case and refashioned the statute at issue, specifically to apply A2 only to those offenders who commit an offense against children, thus solving the identified problem at the district court. They also added a list of examples to A3, thus solving the problem identified by the district court. That statute is already in effect. So any sort of... So you don't, you wouldn't challenge the proposed statute? I can't say that, Your Honor, simply because I haven't done an extensive analysis. Okay. I'm not sure that... You're not prepared right now to say that there's anything wrong with those. Your Honor, I simply have not done an analysis. Okay. All I can say with specificity is that the legislature appears to have taken the district court's ruling, taken it to heart, and has already enacted a new statute that addresses the specific deficiencies found by the district court. So what is at issue here? Well, Your Honor, the legislature did something pretty interesting. They put a provision in the statute that says that if this court were to rule in favor of the state, then the law would revert back to the old version. So they've put a new statute in place that effectively addresses the issues put forward by the district court, but then said, and they're asking this court to basically say, but go ahead and tell us whether our old statute was valid, because if you do, we'll just go back to that one. So what relief did you ask for in your case? We asked for a permanent injunction against enforcement of the statute. Not money damages? No, no, Your Honor. Okay, and did you bring a 1983 action? Yes, Your Honor. So attorney's fees are at issue too? Yes, Your Honor. We would apply for attorney's fees. Okay. Thank you. Okay, thank you very much. Before you get going, maybe you can tell me whether you ever relied on this department charter, whatever it was, before the district court. We were obviously aware of that study. That wasn't the question though. Did you rely on it? Did you say, no, we don't have to put in evidence because we have this evidence? Or did you rely on it in your argument? We relied on it in the argument before this court, before the district court. No, Your Honor. So if I go back and look at the briefs and the transcript, I'll find reliance by you on it. What we were relying on before the district court, Your Honor, were the various Supreme Court cases, McClune versus Lyle. And I'm happy to listen to that, but did you rely on this DOJ thing? No, Your Honor, because . . . Thank you. The issue before the court with respect to A2 is whether or not these adult victim offenders pose a risk to minors. Even before you get to the DOJ study, it should be clear that they do. The Supreme Court has, on multiple occasions, recognized sex offenders as a class as posing a risk to minors, Connecticut versus Department of Public Safety, or Connecticut Department of Public Safety versus DOE's are among cases that represent that. This threat has been recognized by Congress, Your Honor, in enacting the SORNA statutes. It's been recognized by our General Assembly and our Supreme Court. In addition to that, the state defendants offered dozens of real case law examples which illustrate the point, real scenarios where adult victim offenders have gone on to commit crimes against children. And so, even before you get to a DOJ study, it should be clear that this risk is real and not just conjectural. But beyond that, this court does have before it in the record proof from a study, an analysis that shows that 1.3% of our adult victim offenders commit a crime against a child. That justifies this statute. Your Honor's correctly noted that the district court already found that this was constitutional with respect to child victim offenders and that alternate channels of communication are open to these individuals. The restriction provides a discrete 300-foot buffer zone. It's not a complete ban to these public places. With respect to the new law that the court had a question about, the state was unable to obtain a stay in this case, and so our General Assembly was required to pass a law to fill that void during the pendency of this litigation, to have a law in place where we can ensure the safety of minors. The General Assembly, though, contemplated that this statute is constitutional as written, both Sections A-2 and A-3. We would ask this honorable court to find that A-2 is not overbroad with respect to adult victim offenders, and we would respectfully request that the court find that Section A-3 is not vague because it does have a common core that is readily understandable. Those easy-to-determine scenarios, for example, the sporting events in a public place like a park, a sex offender would understand that they cannot be there. The marginal cases should be handled in as-applied challenges. There is an example of that in the record, State v. Daniels, involving A-3, and in that case the sex offender was found to be between a parking lot and the ball field where the children regularly gathered, or the minors did, and the court found that it was vague as applied to that defendant, not vague on its face because of where the gentleman was located. And so in those marginal offenses, we would state that they should be as-applied challenges, not striking the statute in its entirety. Thank you very much. We will ask the clerk to adjourn court, and then we'll come down and say hello to the lawyers.
judges: Diana Gribbon Motz, William B. Traxler, Jr., G. Steven Agee